UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DENNIS D. JACKSON,

       Petitioner,

           v.

UNITED STATES OF AMERICA,

       Respondent.

Civil No. 21-cv-361-JPG
Criminal No 17-cr-40052-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Dennis D. Jackson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) and his amended motion (Doc. 11). The Government has responded to the amended motion (Doc. 16), and Jackson has replied to that response (Doc. 19).

## I.  Background

In June 2018, a grand jury returned the Third Superseding Indictment charging Jackson with two counts of distribution of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts 1 and 2), one count of distribution of 5 grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) (Count 3), one count of possession with intent to distribute 50 grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) (Count 4), one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 5), and one count of possessing a firearm (actually, four firearms) as a felon in violation of 18 U.S.C. § 922(g)(1) (Count 6).

The Government also filed an information under 21 U.S.C. § 851 alleging two prior felony drug offenses—two Illinois convictions, one for unlawful possession with intent to deliver

cocaine and one for unlawful possession of MDMA—to seek an enhanced statutory sentencing range.   As a result of the information, under the version of 21 U.S.C. § 841(b)(1) then in place, Jackson's statutory sentencing range on Counts 1 and 2 became no more than 30 years, on Count 3 became 10 years to life, and on Count 4 became mandatory life.

As part of the investigation of Jackson that led to these charges, the Government used a confidential source ("CS") to make three controlled purchases from Jackson.   The Government used evidence obtained in those controlled purchases to obtain a search warrant of Jackson's home, and the search yielded methamphetamine, other drugs, cash, scales, and multiple loaded firearms.   Before trial, the CS escaped from the jail where he was being held on unrelated charges.   The CS was captured two days before Jackson's trial.   Even so, the Court—over Jackson's objection—allowed the Government to show the jury recordings depicting the controlled purchases, reasoning that they were not hearsay because they were not being offered for their truth and thus did not violate the Sixth Amendment's Confrontation Clause.   The Court gave an appropriate limiting instruction.   The Court also denied Jackson's motion to suppress, where he raised several Fourth Amendment arguments relating to the search of his home.

In July 2018, a jury found Jackson guilty of Counts 1 through 4 but could not reach a decision on Counts 5 and 6, which the Government eventually dismissed.   At sentencing in November 2018, the Court sentenced Jackson to 360 months in prison on Counts 1 and 2, 480 months on Count 3, and mandatory life on Count 4.

Jackson appealed his conviction to the Court of Appeals for the Seventh Circuit, arguing that the Court erred by (1) admitting the recording and law enforcement officers' related testimony about the recording into evidence at trial and (2) not reducing his sentence under the

2

First Step Act of 2018, which took effect less than a month after his sentencing and reduced the statutory minimum sentence on Count 4 to 25 years for those in Jackson's circumstances.   *See United States v. Jackson*, 940 F.3d 347 (7th Cir. 2019).   On October 8, 2019, the Court of Appeals affirmed Jackson's sentence in all respects.   *See id*. at 349-54.   Jackson did not seek a writ of *certiorari* from the Supreme Court.

## II.      § 2255 Motion

In his § 2255 motion, mailed on March 29, 2021, and docketed April 5, 2021, the petitioner raises the following claims:

Ground 1:   Counsel was constitutionally ineffective in connection with the motion to suppress, in making stipulations with which Jackson did not agree, in failing to object to certain evidence, in connection with the appeal, and in connection with various other trial and sentencing matters;

Ground 2:   The Court denied Jackson due process when it admitted recordings of the CS even after the CS was apprehended and was available to testify at trial, failed to have a hearing on his motion to suppress, failed to appreciate chain of custody issues, and subjected him to double jeopardy;

Ground 3:   The Government obtained evidence through illegal eavesdropping and colluded with state law enforcement to bring federal charges;

Ground 4:   The Court wrongfully denied the motion to suppress, and the Government used evidence from illegal eavesdropping to obtain a warrant to search Jackson's home.

Following review pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"), the Court determined Jackson was plainly not entitled to relief on his assertions:

- that the Court erred by admitting the recordings of the CS into evidence without giving Jackson an opportunity to cross-examine the CS in violation of the Confrontation Clause;

- that counsel failed to challenge the chain of custody of the drug evidence; and

- that Jackson was subjected to double jeopardy by state and federal prosecutions for the same conduct.

Jackson then amended his § 2255, mailed January 5, 2022, and docketed January 12, 2022, to add additional arguments:

Amendment Claim 1: Counsel was constitutionally ineffective when he failed to argue that Jackson's prior convictions charged in the § 851 information did not support enhanced sentencing ranges under 21 U.S.C. § 841(b)(1);

Amendment Claim 2: Counsel was constitutionally ineffective when he stated to the jury that Jackson was "not innocent" when Jackson had instructed him to take the position that he was innocent of all charges; and

Amendment Claim 3: Counsel was constitutionally ineffective when he failed to seek suppression of the evidence found in the search and its fruits on the grounds that the search violated his Fourth Amendment rights because it violated state law regarding searches.

In his amended motion, Jackson further argues that his original § 2255 motion was timely.   He notes that the Clerk of Court docketed his original motion on April 5, 2021, months beyond the one-year deadline as calculated under 28 U.S.C. § 2255(f).   He argues that the deadline should be equitably tolled.

The Court ordered the Government to respond to the unresolved grounds alleged for § 2255 relief.   The Government contends that Jackson's motion and its amendment are untimely, that he has procedurally defaulted a number of his arguments, and his arguments have no merit.

The parties' arguments are now before the Court.

## III.   Analysis

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255(a).   However,

"[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"   *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

The Court first turns to the issue of timeliness, then to Jackson's substantive arguments.

A.    Timeliness

A petitioner seeking relief under § 2255 must file his motion within the one-year statute of limitations set forth in § 2255(f).   The one-year limitations period runs from the latest of four events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).   Thus, the Court asks when Jackson's one-year period began and whether his motion fell within that period.

It appears that the applicable trigger for the one-year period for Jackson is found in

§ 2255(f)(1); he has not asserted any governmental impediment to making a motion, any right newly recognized by the Supreme Court, or any newly discovered evidence.   Indeed, Jackson concedes that § 2255(f)(1) triggers the one-year period but argues that equitable tolling should apply.

### 1.   Date Conviction Becomes Final, § 2255(f)(1)

Where a petitioner files a direct appeal but does not seek review by the United States Supreme Court, a judgment of conviction becomes final for § 2255 purposes when the time expires for filing a petition for a writ of *certiorari* contesting the appellate court's decision. *Clay v. United States*, 537 U.S. 522, 524-25 (2003).   The period for filing such a petition expires 90 days after the court of appeals enters judgment or denies a petition for rehearing.   S. Ct. R. 13(1) & (3).   The Court of Appeals affirmed Jackson's sentence on October 8, 2019, so his deadline for filing a petition for a writ of *certiorari* expired 90 days later—on January 6, 2020. Thus, the one-year period under § 2255(f)(1) expired on January 6, 2021.   Jackson's original § 2255 motion, deemed under the mailbox rule to have been filed March 29, 2021, and his amended § 2255 motion, deemed to have been filed January 6, 2022, were beyond this deadline. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (mailbox rule).

### 2.   Equitable Tolling

Jackson concedes that his original § 2255 motion was late but urges the Court to consider it timely under the doctrine of equitable tolling.   The one-year limitations period is not jurisdictional and can be equitably tolled in an appropriate case.   *Holland v. Florida*, 560 U.S. 631, 645 (2010) (considering § 2244(d)'s similar one-year limitation for § 2254 petitions); *Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021).   Tolling is appropriate where a

petitioner has been reasonably diligent in pursuit of his rights but some extraordinary circumstance prevented him from timely filing his motion. *Holland*, 560 U.S. at 649; *Ademiju*, 999 F.3d at 477. The extraordinary circumstances must be "both extraordinary *and* beyond [the petitioner's] control." *Menominee Indian Tribe of Wis. v. United States*, 477 U.S. 250, 257 (2016); *accord Ademiju*, 999 F.3d at 477; *Lombardo v. United States*, 860 F.3d 547, 552 (7th Cir. 2017). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

Generally, neither counsel's ineptitude nor garden-variety excusable neglect by itself warrants equitable tolling of the § 2255 one-year limitations period. *Ademiju*, 999 F.3d at 477; *Lombardo*, 860 F.3d at 552. Nor does a petitioner's limited access to a prison law library. *Ademiju*, 999 F.3d at 478. On the other hand, abandonment by counsel without notice can justify equitable tolling. *Id.* at 477; *see Maples v. Thomas*, 565 U.S. 266, 281-83 (2012). The key question is whether counsel, as the client's agent, made a mistake that the client will have to live with, or whether counsel ceased functioning as the client's agent without notice to the client that the client was on his own. *Maples*, 565 U.S. at 283.

As a preliminary matter, the Government argues that, in light of *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710 (2019), equitable tolling cannot apply to the one-year deadline to file a § 2255 motion. *Nutraceutical* held that the 14-day deadline in Federal Rule of Civil Procedure 23(f) to appeal class action certification or decertification decisions is not subject to equitable tolling because Rule 26(b) expresses the intent to rigorously enforce appeal deadlines. *Id.* at 715. The Government claims the one-year deadline to file a § 2255 motion is also a "mandatory claim-processing rule" not subject to equitable exceptions. However, *Nutraceutical* did not

7

expressly overrule *Holland*, which clearly holds equitable tolling may apply to the § 2255 one-year deadline, and the Government has not pointed to any expression of Congress's intent not to allow equitable tolling in that circumstance.   Until the Supreme Court or the Court of Appeals for the Seventh Circuit holds that *Holland* is no longer good law for the proposition, this Court will continue to apply equitable tolling to § 2255 motions in appropriate circumstances.

Jackson argues that the deadline should be equitably tolled because of his unique circumstances.   First, Jackson claims his attorney abandoned him when he failed to advise Jackson that his appeal had been decided on or around October 8, 2019, and when he failed to respond to Jackson's many inquiries into the status of his case or take certain actions Jackson had requested.   Because of counsel's lack of communication, Jackson did not know his one-year period had begun to run.   In his original March 2021 § 2255 motion he claimed that he "just recently found out [his sentence] was affirmed," Pet.'s § 2255 Mot. ¶ 18 (Doc. 1).

Second, he claims he had essentially no access to the law library from November 2019 to March 2021 because of lockdowns, COVID-19 prevention measures at United States Penitentiary-Lee, where he was housed, and his own illness from COVID-19 from December 2020 to February 2021.   This assertion is supported at least for part of that time by a memorandum from Jackson's unit manager stating that Jackson had limited access to the library and his legal work since March 2020, when pandemic restrictions began, but had access as of December 7, 2020 (Doc. 1 at 13).   When this access began, Jackson claims it was essentially ineffective because an entire unit of 50 inmates had access to one legal computer to access Lexis for only two hours a day only three times a week, making it effectively unavailable for those who were not the first to arrive and claim the computer.   Consequently, he had no way to

independently research whether the Court of Appeals had decided his case.   He does not say how he eventually discovered his appeal had been decided.

The Court assumes Jackson's allegations are true that his counsel failed to notify him when his appeal had been decided and that Jackson's description of his access to legal resources until March 2021 is accurate.   Regardless of whether counsel's conduct qualifies as "abandonment" or mere negligence—the failure to keep a client apprised of the status of a case—the Court does not believe it is sufficient, by itself, to justify equitable tolling.

Nevertheless, in combination with other circumstances, the Court believes equitable tolling is appropriate to render Jackson's original § 2255 motion timely.   While counsel's lack of response to Jackson's communications should have tipped Jackson off that he might be on his own and should try to locate independently the information he was seeking, other factors over which Jackson had no control made it exponentially more difficult to do this.   Conditions at the prison, whether pre-COVID-19 lockdowns or COVID-19 disease prevention measures, essentially deprived Jackson of his ability to diligently follow up on the status of his appeal at the law library during the relevant time period.   The Court does not criticize the prison for the restrictions it imposed—the COVID-19 pandemic overwhelmed prison resources with the monumental challenges of preventing the disease from spreading, making sure inmate's essential needs were met, and otherwise ensuring the safety and functioning of the facility.   But the Court believes it can be appropriate in certain cases to accommodate the difficulties inmates faced because of those restrictions by extending or equitably tolling deadlines.

Additionally, the Court is cognizant that Jackson received a life sentence, a serious matter which the Court does not take lightly.   Accordingly, it is inclined to broadly construe the

doctrine of equitable tolling to entertain arguments that were arguably timely to ensure a life sentence was properly imposed.   For these reasons, Jackson's case warrants equitable tolling of the one-year deadline until March 29, 2021, the day Jackson signed and mailed his original § 2255 motion.   It will deem that motion timely.

3.     Relation Back of Amended § 2255 Motion

Jackson's amended § 2255 motion, mailed January 5, 2022, is a different story.   Jackson filed his amended § 2255 motion nearly a year after his one-year deadline expired and months after the conditions that impeded his filing a § 2255 motion improved enough for him to be able to file a § 2255 motion.   Therefore, in order for the claims in his amended § 2255 motion to be timely, they must relate back to his original § 2255 motion, which the Court deems timely because of equitable tolling.

An amendment to a § 2255 motion may relate back to the original § 2255 motion where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."   Fed. R. Civ. P. 15(c)(1)(B); *see* § 2255 Rule 12 (applying Federal Rules of Civil/Criminal Procedures so long as they are not inconsistent with statutes or § 2255 Rules); *see also* Fed. R. Civ. P. 81(a)(4).   An amendment will not relate back, however, "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."   *Mayle v. Felix*, 545 U.S. 644, 650 (2005).   At one point the Court of Appeals for the Seventh Circuit held that any new argument in an amended petition attacking the same trial or conviction as the original motion did arise out of the same "conduct, transaction, or occurrence" and would therefore relate back.   *See Ellzey v. United States*, 324 F.3d 521, 527 (7th Cir. 2003), *abrogated by Mayle*, 545

10

U.S. at 659.   However, in *Mayle*, the Supreme Court rejected that rule and adopted a far narrower view of "conduct, transaction, or occurrence."   *Mayle*, 545 U.S. at 659, 664.

    *Mayle* considered whether an amended § 2254 motion asserting ineffective assistance of counsel in relation to an alleged wrongful coercion of pretrial statements in violation of the Fifth Amendment related back to an original *pro se* § 2254 motion asserting the wrongful admission of videotaped testimony in violation of the Sixth Amendment.   *Id.* at 648.   The Supreme Court concluded that whether claims arose out of the same "conduct, transaction, or occurrence" depended on whether they shared a "common core of operative facts."   *Id.* at 664.   Thus, the petitioner's self-incrimination claims were discrete from his Confrontation Clause claims and did not arise out of the same "conduct, transaction, or occurrence" for relation back purposes.   *See id.* at 661.

    The Court now turns to Jackson's claims in his amended § 2255 motion to see if they share a common core of operate facts with those in his original motion.

a.   <u>Amendment Claim 1</u>

    The first claim in Jackson's amended § 2255 motion is that his counsel was constitutionally ineffective because he failed to argue at sentencing that Jackson's prior convictions charged in the § 851 information were inadequate to support enhanced sentencing ranges under 21 U.S.C. § 841(b)(1) using the categorical approach.   This argument is based on cases decided before Jackson's original § 2255 motion—*Mathis v. United States*, 579 U.S. 500 (2016), *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), and *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1239 (2021).   He contends in his amended § 2255 motion that he "was not thoroughly clear with this issue in his prior motion."   Am. § 2255 Mot.

11

2 (Doc. 11).   It is true that in his original motion, he asserted that his counsel was ineffective

when he "didn't object to prior convictions being established."   § 2255 Mot. 5 (Doc. 1).

Not only was Jackson "not clear" in articulating his categorical approach argument, he

did not even hint at it in his original motion.   The process for "establishing" a prior conviction is

set forth in § 851 ("Proceedings to establish prior convictions"), which provides a defendant an

opportunity to object to its establishment:

**(b)   Affirmation or denial of previous conviction**
If the United States attorney files an information under this section, the court shall
after conviction but before pronouncement of sentence inquire of the person with
respect to whom the information was filed whether he affirms or denies that he
has been previously convicted as alleged in the information, and shall inform him
that any challenge to a prior conviction which is not made before sentence is
imposed may not thereafter be raised to attack the sentence.

**(c)   Denial; written response; hearing**
    **(1)**   If the person denies any allegation of the information of prior
conviction, or claims that any conviction alleged is invalid, he shall file a
written response to the information.   A copy of the response shall be
served upon the United States attorney.   The court shall hold a hearing to
determine any issues raised by the response which would except the
person from increased punishment.   The failure of the United States
attorney to include in the information the complete criminal record of the
person or any facts in addition to the convictions to be relied upon shall
not constitute grounds for invalidating the notice given in the information
required by subsection (a)(1).   The hearing shall be before the court
without a jury and either party may introduce evidence.   Except as
otherwise provided in paragraph (2) of this subsection, the United States
attorney shall have the burden of proof beyond a reasonable doubt on any
issue of fact.   At the request of either party, the court shall enter findings
of fact and conclusions of law.
    **(2)**   A person claiming that a conviction alleged in the information was
obtained in violation of the Constitution of the United States shall set forth
his claim, and the factual basis therefor, with particularity in his response
to the information.   The person shall have the burden of proof by a
preponderance of the evidence on any issue of fact raised by the response.
Any challenge to a prior conviction, not raised by response to the
information before an increased sentence is imposed in reliance thereon,
shall be waived unless good cause be shown for failure to make a timely

12

challenge.

21 U.S.C. § 851.

A common-sense reading of an accusation that counsel "didn't object to prior convictions being established" is that counsel failed to make the objections described in § 851(b) and (c).   It does not encompass—or arise out of a common core of operative facts as—an argument about the legal effect of established prior convictions.   Jackson makes this argument too late, so the Court rejects it as a ground for § 2255 relief.

> b.   <u>Amendment Claim 2</u>

The second claim in Jackson's amended § 2255 motion is that his counsel was constitutionally ineffective for stating to the jury in the closing argument that Jackson was "not innocent."   The transcript of counsel's closing reveals that, after acknowledging Jackson was a convicted felon, counsel said:

> I am not saying that my client is innocent.   No, I'm not. Like I said, I'm not trying to pull the wool over your eyes.   I'm not trying to do any of that murky water business he's [the prosecutor's] talking about.
>      I'm saying that he's not guilty.   The Government hasn't proved beyond a reasonable doubt.   That's what I'm saying.
> * * *
>      Like I say, I'm not saying he's innocent.   I'm saying the Government has not proved beyond a reasonable doubt that he's guilty.

Trial Tr. 579-80 (Case No. 17-cr-40052-JPG, Doc. 127).

Nothing in Jackson's original motion is based on the same core of operative facts as this argument is—the statements in counsel's closing argument as set forth above.[1]   Therefore,

---

[1] Jackson's original § 2255 motion complained of his counsel's making stipulations without his knowledge, consent, or permission.   However, Jackson is clear in his motion that those stipulations were that counsel would not use the criminal history of the CS, not that Jackson was "not innocent."

13

Amendment Claim 2 does not relate back to Jackson's original § 2255 motion, and the Court rejects it as untimely.

    c. <u>Amendment Claim 3</u>

  The third claim in Jackson's amended § 2255 motion is that his counsel was constitutionally ineffective in his efforts to seek suppression of the evidence found in a search of his home conducted on March 16, 2017.   This claim arises out of some of the same operative facts as part of Ground 1 of Jackson's original § 2255 motion, which claims counsel was constitutionally ineffective for failing to file a motion "properly," failing to demand a hearing on the motion, and failing to object to the order denying the motion.   While the factual allegations in the original petition are vague, liberally construing Jackson's filings, the Court finds Amendment Claim 3 relates back to Ground 1 of the original § 2255 motion.

    B. <u>Grounds Timely Alleged</u>

     1. <u>Ineffective Assistance of Counsel</u>

  Ground 1 of Jackson's original § 2255 motion and Amendment Claim 3 allege claims of ineffective assistance of counsel.   The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

  A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668,

688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).   To satisfy the first

prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of

his counsel.   *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).   The Court must then

consider whether, in light of all of the circumstances, counsel's performance was outside the

wide range of professionally competent assistance.   *Id.*   To satisfy the second prong of the

*Strickland* test, the petitioner "must demonstrate 'a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.   A reasonable

probability is a probability sufficient to undermine confidence in the outcome.'"   *Harrington v.

Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d

at 591.

     Jackson alleges a hodgepodge of instances of ineffectiveness, many too vague for the

Court to fully understand his argument.   The Court will briefly address each in turn, but only

after observing the general rule that when a petitioner alleges his counsel was constitutionally

ineffective for failing to do a proper investigation, file motions, make arguments, or raise issues,

he must specify the things counsel would have found in a competent investigation or could have

said in a motion or argument, and he must explain how the omitted evidence or argument would

have had a reasonable chance of changing the result of the proceedings.   *See Long v. United

States*, 847 F.3d 916, 920 (7th Cir. 2017) (petitioner must point to what an investigation would

have produced); *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (petitioner must

make a comprehensive showing as to what an adequate investigation would have produced);

*Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (petitioner must point to evidence or

meritorious argument counsel could have presented that would have created a reasonable

probability that the result of the proceedings would have been different).   Jackson fails to do this

in a number of his specific allegations of ineffective assistance of counsel in Ground 1 and

Amendment Claim 3:

- Jackson claims his counsel failed to file a motion to suppress properly and failed to assert the search violated his Fourth Amendment rights.   Counsel did, in fact, invoke Jackson's Fourth Amendment rights in the motion based in part on law enforcement's failure to have probable cause and failure to follow state law regarding overhears.   However, Jackson does not assert what argument or evidence counsel could have presented differently in the motion that would have had a reasonable chance of convincing the Court to grant the motion and suppress evidence.

- Jackson faults his counsel for failing to demand a hearing on the motion to suppress and for failing to object to the order denying the motion.   Counsel did, indeed, request a hearing, but the Court denied that request, and Jackson has not specified what counsel could have said that might have changed the Court's mind.   The Court decided the motion on the papers, accepting all Jackson's well-pled factual allegations as true. However, there was no need for a hearing because the well-pled facts did not establish a *prima facie* showing of illegality in the search, although a post-search technicality rendered the evidence inadmissible in state court.   Nor has Jackson pointed to anything counsel could have presented at a hearing that would have had a reasonable probability of convincing the Court to grant the motion under federal suppression standards. Additionally, Jackson has not suggested what counsel might have said in response to the order denying his motion to suppress that would have had a reasonable probability of causing the Court to reverse its decision.

- Jackson faults his counsel for failing to file post-trial motions, and in correspondence he allegedly sent to Jackson he lists a number of topics he wanted counsel to address in such motions—motion to suppress, Fourth Amendment violations, Sixth Amendment violations, lack of probable cause for the search, challenges to the search warrant, and illegal eavesdropping (Doc. 11 at 33), as well as other topics raised at sentencing (Case No. 17-cr-40052-JPG, Doc. 158).   Even with respect to those topics, though, Jackson does not suggest what arguments competent counsel should have made in a post-trial motion and how they would have benefitted his case.   In the amendment to his petition, he suggests counsel should have filed a motion under Federal Rule of Criminal Procedure 35(a) to correct a "clear error," but the issues of which Jackson complains to not amount to the kind of errors correctible under this rule.   Thus, he has not demonstrated he was prejudiced by counsel's failing to file post-trial motions.

- Jackson faults counsel for failing to move to dismiss the indictment based on defects and grand jury violations, but he does not suggest the nature of the defects and violations or how they rendered the indictment subject to dismissal.   Without pointing to the specific

16

arguments competent counsel could have used to seek dismissal of the indictment that would have created a reasonable chance the Court would actually have accepted those arguments, Jackson cannot show counsel was ineffective in this regard.

- Jackson faults counsel for failing to object to his guideline offense level enhancements— possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1); directing the use of violence pursuant to U.S.S.G. § 2D1.1(b)(2); maintaining a residence for drug distribution pursuant to U.S.S.G. § 2D1.1(b)(12); and obstruction of justice pursuant to U.S.S.G. § 3C1.1.   Counsel did object to these enhancements in the objections to the PSR, and Jackson has not specified what he could have said differently that would have had a reasonable chance of changing the outcome of the sentencing proceeding.

- Jackson faults counsel for failing to object to the establishment of the prior state convictions used to determine his criminal history category and increase his statutory sentencing range.   Jackson has not pointed to any evidence showing the convictions listed in the PSR or the § 851 information were inaccurate, were not his, or were otherwise subject to objection under 21 U.S.C. § 851(b) and (c).   Thus, he has not established what evidence or argument competent counsel could have presented to cause the Court to find those convictions did not, in fact, exist or were not, in fact, his convictions.

In other allegations of ineffective assistance of counsel, Jackson argues that counsel should not have stipulated that he would not use the criminal history of the CS who conducted the controlled buys upon which the search warrant was based to impeach the CS at trial. Counsel apparently did this when he believed the Government would call the CS as a witness. The Government ended up not calling the CS to testify, so counsel's agreement about limiting impeaching evidence was immaterial to the trial.   Jackson suffered no prejudice from counsel's stipulation.

Jackson faults counsel for failing to object to a violation of Title III, the federal eavesdropping statute, with respect to recordings of the three controlled buys in March 2017. Law enforcement used those overhears and recorded information to seek the search warrant for the March 16, 2017, search of Jackson's home.   The recordings were properly authorized by the Saline County State's Attorney, as explained in the Court's denial of Jackson's motion to

suppress, although the failure to follow technical requirements rendered them inadmissible in state court (Case No. 17-cr-40052-JPG, Doc. 84).   Those recording, however, did not violate Title III, which permits a person acting under color of law (such as a confidential informant working for law enforcement) to intercept and record an oral communication of a conversation in which the person is a party.   18 U.S.C. § 2511(2)(c).   Nor, as the Court explained in its suppression order, did the admission of those recordings violate any other federal law or the Constitution.   The recordings of the communications between the CS and Jackson that formed the basis for the search warrant request did not violate Title III.   Any objection to the use of the recordings as in violation of Title III would have been meritless and would have been—as is clear in the Court's denial of Jackson's motion to suppress—rejected by Court.   Counsel was not deficient for failing to make a frivolous argument, and Jackson suffered no prejudice as a result.

Jackson complains that counsel failed to give him an opportunity to review the brief filed in his direct appeal and failed to keep Jackson apprised of the outcome of the appeal.   It is true counsel has an obligation to "keep the defendant informed of important developments in the course of the prosecution."   *Strickland*, 466 U.S. at 688.   However, counsel that fails to communicate is not constitutionally ineffective unless that failure causes some prejudice.   *Id.* at 687.   Here, even if counsel's failure to show Jackson the appellate brief before he filed it could be construed as short of adequate performance, Jackson has not explained how the brief could have been made compelling enough to cause the Court of Appeals to reverse his sentence. Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the sun." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir.1996).   Counsel is only deficient if he "fails to

appeal an issue that is both obvious and clearly stronger than one that was raised."   *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001); *accord Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015); *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008).   Furthermore, a petitioner can show prejudice from this deficiency only by demonstrating "that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different."   *Suggs*, 513 F.3d at 678.   Jackson has pointed to no argument that is obvious and clearly stronger than the ones that his counsel raised and that would have had a reasonable probability of changing the result of the appeal.

Counsel's failure to notify Jackson in a timely manner (which the Court accepts as true for the purposes of this motion) of the disposition of his appeal meant that Jackson did not file a timely motion for a rehearing before the Court of Appeals or petition for a writ of *certiorari* from the Supreme Court.   But Jackson has not pointed to any argument that could have been made in those proceedings that would have had a reasonable chance of changing the result of his case. The Court of Appeals had already rejected the arguments counsel made, and nothing suggests a rehearing would have reached a different result.   As for reaching the Supreme Court, even having the case accepted was a long shot, and nothing suggests there was any issue the Supreme Court would have relied on to reverse his sentence.[2]   As for Jackson's delay in filing a timely § 2255 motion, Jackson has suffered no prejudice because the Court has accepted as timely his

---

[2] To the extent Jackson may fault counsel for not filing a petition for a writ of *certiorari* based on his earlier request, counsel had no duty to comply with that request.   "[T]here is no constitutional right to counsel at public expense when asking the Supreme Court for a writ of certiorari."   *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021).   The potentially prejudicial delay would come from Jackson's inability to file his own timely *pro se* petition but, as noted in the body of this order, Jackson has not offered any argument the Supreme Court had a reasonable chance of accepting.

March 29, 2021, original motion.   He has simply pointed to no prejudice from counsel's failure to timely notify him of the disposition of his appeal.

One final note about counsel's performance is warranted.   The Court judges counsel's performance as a whole rather than in isolated instances of alleged errors.   *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014).   After carefully reviewing the record as a whole and in light of the evidence in the case, the Court finds that there is no reasonable probability that, but for the alleged errors of counsel in this case, even if considered in combination, the result of the proceedings would have been different.   Jackson presented a situation no lawyer likes to face:   strong evidence against a client for multiple crimes, one of which would expose him to a mandatory life sentence.   Counsel competently pursued reasonable avenues to reduce the risk to Jackson, from filing motions, exploring plea negotiations, performing valiantly at trial (leading to a hung jury on two counts), making reasonable objections at sentencing, and pursuing competently-chosen arguments on appeal.   That his efforts did not succeed does not mean they were deficient.   On the contrary, counsel acted well within the range of reasonably competent performance.

### 2.   Procedural Default

A § 2255 motion does not substitute for a direct appeal.   Generally, a petitioner cannot raise a claim for the first time in a § 2255 motion where he could have but failed to raise it on direct appeal.   *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021) (citing *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016)).   A petitioner can overcome this procedural default for constitutional claims if he can show cause for the default and prejudice from it or that he is actually innocent of the crime.   *White*, 8 F.4th at 554 (citing *Bousley v. United States*, 523 U.S.

614, 622 (1998)).   Not so for nonconstitutional claims, which cannot be raised in a § 2255 motion regardless of cause or prejudice.   *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) ("Nonconstitutional claims . . . which could have been raised on direct appeal but were not, are deemed waived even without taking cause and prejudice into account.").

And just as a § 2255 motion is not a substitute for a direct appeal, it is not a second chance where a direct appeal was unsuccessful.   A petitioner cannot raise an issue in a § 2255 motion that he already raised on direct appeal unless he can show changed circumstances. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

a.   Hearing on Motion to Suppress

The only assertion left in Ground 2 after the Court's preliminary screening order is that Jackson's due process rights were violated because the Court refused to hold a hearing on the motion to suppress.   As a preliminary matter, Jackson has procedurally defaulted on this claim. The failure to provide a hearing on a motion to suppress is an issue that could have been raised on direct appeal.

On direct appeal, Jackson did not raise a due process claim regarding the Court's failure to hold a hearing on his motion to suppress, and he has not shown cause or prejudice now.   And while ineffective assistance of counsel can constitute cause for failing to raise an issue on direct appeal, appellate counsel was not deficient in this case.   The issues he raised on appeal were reasonable, and the Court's failure to hold a hearing was not an obvious issue that was clearly stronger than the ones raised.   As explained above, the Court afforded Jackson an opportunity to be heard, albeit on paper, and decided the motion viewing all well-pled fact in his favor.

21

Declining to hold a hearing did not prejudice Jackson.   Because he has procedurally defaulted on Ground 2 of his original § 2255 motion, he is not entitled to § 2255 relief.

>    b.    <u>Collusion between Federal and State Officials</u>

In Ground 3, Jackson alleges the nonconstitutional claim that there was something improper about the interactions, which he characterizes as collusion, between state and federal law enforcement officials in investigating his activity and bringing his criminal case.   He believes there is something wrong with state officers' conducting an investigation without federal assistance, and then federal officials' prosecuting the case that resulted from the investigation conducted solely by state officials, including the use of evidence that would be inadmissible under state law but not federal law.

The circumstances on which Jackson's claim is based were fully reflected in the criminal case record, including but not limited to the briefing on his motion to suppress and the Government's motion in limine.   Jackson could have raised this issue on direct appeal, but he did not.   Consequently, he cannot raise the claim now in his § 2255 motion.

To the extent Jackson may suggest this is a constitutional issue, he has not shown cause or prejudice.   Specifically, he has pointed to no law indicating the conduct of the state and federal participants in this case was wrongful.   Counsel was not deficient for failing to raise the issue on direct appeal in favor of the stronger arguments he did raise, and Jackson suffered no prejudice from that decision.

>    c.    <u>Denial of Motion to Suppress</u>

In Ground 4, Jackson asks the Court to revisit its denial of his motion to suppress. Again, this could have been raised on direct appeal but was not.   Jackson has not shown that this

issue was obvious and clearly stronger than the arguments that were raised.   Indeed, he had a full and fair opportunity to litigate his Fourth Amendment claim at the trial court level.   *Owens v. United States*, 387 F.3d 607, 609 (7th Cir. 2004) (citing *Stone v. Powell*, 428 U.S. 465 (1976). And as set forth in the Court's discussion of his first ineffective assistance of counsel argument above, Jackson has not shown, even now, that there was any Fourth Amendment violation that would have justified suppressing evidence found in the search or as the "fruit of the poisonous tree."   In the absence of cause and prejudice, Jackson cannot raise this issue in his § 2255 motion.

## IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing where the Court denies relief on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added); *accord Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012).   Thus, disputes about procedural or statutory issues in a case cannot justify a certificate of appealability unless "a substantial constitutional issue lurks in the background, and the statutory question is independently substantial."

23

*Ramunno v. United States*, 264 F.3d 723, 725 (7th Cir. 2001) (question of a petition's timeliness) (citing *Slack*, 529 U.S. at 483-85).

The Court finds that Jackson has made an adequate showing to warrant a certificate of appealability on the following questions:

- The procedural question of whether Jackson's Amendment Claim 1, deemed filed January 5, 2022, relates back to Jackson's original § 2255 motion, deemed filed March 29, 2021, and,

- The substantial constitutional question lurking in the background of whether Jackson has stated a valid claim for denial of his Sixth Amendment right to effective assistance of counsel because, at sentencing in November 2018, his trial counsel did not challenge whether Jackson's prior state drug convictions charged in the § 851 information supported enhanced sentencing ranges under 21 U.S.C. § 841(b)(1) after *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018), and *Lorenzo v. Sessions*, 902 F.3d 930 (9th Cir. 2018), but before *United States v. De La Torre*, 940 F.3d 938, 948 (7th Cir. 2019), and *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1239 (2021).

The Court will deny a certificate of appealability as to all other issues raised in this case.

## V.      Conclusion

For the foregoing reasons, the Court:

- **DENIES** Jackson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and its amendment (Docs. 1 & 11);

- **ISSUES** a certificate of appealability on the questions set forth in the prior section of this order but **DENIES** a certificate of appealability in all other respects; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   December 19, 2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**